Dennis F. Dunne
Evan R. Fleck
Alan Stone
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
*Counsel for Debtors and*
*Debtors-In-Possession*

Gregory Bray
MILBANK LLP
2029 Century Park East,
33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                            :
In re:                                      :    Chapter 11
                                            :
AVIANCA HOLDINGS S.A., et al.,              :    Case No. 20-11133 (MG)
                                            :
                      Debtors.1             :    (Jointly Administered)
                                            :
-----------------------------------------------------------------x
AVIANCA HOLDINGS S.A., et al.,              :
                                            :
                      Plaintiffs.           :
                                            :
v.                                          :
                                            :    Adv. Proc. _____
                                            :
G4S FACILITY MANAGEMENT CIA. LTDA.          :
And G4S SECURE SOLUTIONS                    :
INTERNATIONAL INC.,                         :
                                            :
                      Defendants.           :
-----------------------------------------------------------------x
```

---

[1] The Debtors in these cases, and each Debtor's federal tax identification number (to the extent applicable), are as follows: Avianca Holdings S.A. (N/A); Aero Transporte de Carga Unión, S.A. de C.V. (N/A); Aeroinversiones de Honduras, S.A. (N/A); Aerovías del Continente Americano S.A. Avianca (N/A); Airlease Holdings One Ltd. (N/A); America Central (Canada) Corp. (00-1071563); America Central Corp. (65-0444665); AV International Holdco S.A. (N/A); AV International Holdings S.A. (N/A); AV International Investments S.A. (N/A); AV International Ventures S.A. (N/A); AV Investments One Colombia S.A.S. (N/A); AV Investments Two Colombia S.A.S. (N/A); AV Taca International Holdco S.A. (N/A); Avianca Costa Rica S.A. (N/A); Avianca Leasing, LLC (47-2628716); Avianca, Inc. (13-1868573); Avianca-Ecuador S.A. (N/A); Aviaservicios, S.A. (N/A); Aviateca, S.A. (N/A); Avifreight Holding Mexico, S.A.P.I. de C.V. (N/A); C.R. Int'l Enterprises, Inc. (59-2240957); Grupo Taca Holdings Limited (N/A); International Trade Marks Agency Inc. (N/A); Inversiones del Caribe, S.A. (N/A); Isleña de Inversiones, S.A. de C.V. (N/A); Latin Airways Corp. (N/A); Latin Logistics, LLC (41-2187926); Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.) (N/A); Regional Express Américas S.A.S. (N/A); Ronair N.V. (N/A); Servicio Terrestre, Aereo y Rampa S.A. (N/A); Servicios Aeroportuarios Integrados SAI S.A.S. (92-4006439); Taca de Honduras, S.A. de C.V. (N/A); Taca de México, S.A. (N/A); Taca International Airlines S.A. (N/A); Taca S.A. (N/A); Tampa Cargo S.A.S. (N/A); Technical and Training Services, S.A. de C.V. (N/A).  The Debtors' principal offices are located at Avenida Calle 26 # 59 – 15 Bogotá, Colombia.

**COMPLAINT**

1.      Plaintiffs, the debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") bring this action against G4S Facility Management Cia. Ltda. and G4S Secure Solutions International Inc. (together, "G4S") and respectfully allege as follows:

**NATURE OF THE ACTION**

2.      The Debtors bring this action seeking entry of a judgment (i) declaring, pursuant to sections 105, 362(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), that G4S has violated or willfully violated the automatic stay; (ii) enjoining G4S from commencing or continuing, wherever located, any (x) judicial, administrative or other action or proceeding against the Debtors related to its alleged prepetition claims; (y) act to recover or collect on its alleged prepetition claims; and (z) act to seize or otherwise possess property of the Debtors' estates; (iii) awarding the Debtors actual and punitive damages, including attorneys' fees and costs incurred in connection with G4S's violation of sections 362(a) and 365 of the Bankruptcy Code, and (iv) granting such other relief as this Court deems just and proper.

3.      On May 10, 2020 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      On November 19, 2018, and prior to the Petition Date, the Debtors entered into a Facility Management Services Contract (as amended from time to time, the "Facility Agreement") with G4S. Pursuant to the Facility Agreement, G4S provided certain cleaning, repair, maintenance and fumigation services to the Debtors at various facilities in Ecuador. G4S contends

that certain amounts owed to it under the Facility Agreement were outstanding as of the Petition Date.

5.       Following the Petition Date, and after the repeated provision of verbal and written notice to G4S regarding the existence of the automatic stay, G4S made various attempts to collect on its prepetition claim. Among other things, G4S has, in turn, unilaterally withheld performance under the Facility Agreement, terminated the Facility Agreement, instituted local mediation proceedings and, most recently, threatened to formally institute litigation and seek attachment of the Debtors' bank accounts in Ecuador. With each such act, G4S has expressly acknowledged its intent to recover amounts that allegedly became due and owning prior to the Petition Date.

6.       The Debtors have diligently endeavored to inform G4S of the Bankruptcy Code's protections, but to no avail. Even today, G4S maintains its efforts to recover on its prepetition claim.  As such, the Debtors are now compelled to seek the assistance of this Court in safeguarding the property of their estates and enjoining G4S from pursuing any further legal or collection-related activity against the Debtors during the pendency of these Chapter 11 Cases.

## **JURISDICTION AND VENUE**

7.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

8.       Venue is proper pursuant to 28 U.S.C. § 1409(a).

9.       Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, the Debtors consent to the entry of a final order or judgment by this court.

### THE PARTIES

10.     Plaintiffs, the Debtors in these Chapter 11 Cases, are part of the second largest airline group in Latin America and the largest airline in the Republic of Colombia.

11.     Upon information and belief, the Defendants are part of a multinational security and management services company. G4S Facility Management Cia. Ltda. is incorporated in Ecuador and, pursuant to the Facility Agreement, contracted directly with the Debtors. G4S Secure Solutions International Inc. is incorporated in Florida and indirectly owns and controls G4S Facility Management Cia. Ltda.

### FACTS

12.     The Debtors operate an extensive network of routes from their primary hubs in Bogotá and San Salvador (in addition to other focus markets) and offer passenger services on more than 5,350 weekly flights to more than 76 destinations in 27 countries.  With approximately 18,900 employees and approximately $3.9 billion in annual revenues, the Debtors play a key role in the Latin American airline market.

13.     On March 20, 2020, the Republic of Colombia, consistent with what numerous other governments around the world have done, announced that it would close its airspace to address the spread of COVID-19.  As a result of the restrictions imposed by the Colombian government, as well as similar measures in various other of the Debtors' primary markets, on March 24, 2020 the Debtors announced that they were suspending all scheduled passenger flights.

14.     On May 10, 2020, the Petition Date, the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their properties and continue to operate and manage their businesses as debtors in possession

pursuant to 11 U.S.C. §§ 1107 and 1108. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Amended Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 73].

15.    On May 12, 2020, the Court entered an *Order (I) Enforcing the Protections of 11 U.S.C. §§ 362, 365, 525 and 541(c); (II) Approving the Form and Manner of Notice; and (III) Granting Related Relief* [Docket No. 46] (the "Automatic Stay Order"), which restates and reinforces the protections afforded to debtors by sections 362 and 365 of the Bankruptcy Code.

16.    In the ordinary course of business, the Debtors rely on an extensive network of vendors and suppliers, whose continued service is essential to the reliability of the Debtors' restructuring efforts and operations. G4S was one such vendor. Pursuant to the Facility Agreement, G4S provided cleaning, repair, maintenance and fumigation services, and supplied cleaning and cafeteria items, to the Debtors at their ticket offices, administrative offices and certain other airport facilities in Ecuador.

17.    G4S's services were of particular importance to the Debtors, as they have been working to resume their operations in Ecuador. This initiative continues to represent a key component of the Debtors' early stage restructuring efforts and a crucial source of cash flows. Moreover, in light of COVID-19, the cleaning and maintenance services provided by G4S implicate key public health concerns and are, in fact, required by certain Ecuadorian laws and regulations.

18.    On May 12, 2020, two days after the Petition Date, G4S notified certain Avianca employees of G4S's intention to suspend performance under the Facility Agreement unless certain pre-petition amounts were paid in full.

19.     Avianca promptly responded to these communications with a letter (the "First Notice") dated as of May 18, 2020, detailing the relevant effects of sections 362 and 365 of the Bankruptcy Code, and attaching the Automatic Stay Order. The letter was prepared by counsel in English and translated by Avianca into Spanish prior to delivery. A true and correct copy of the English language letter is attached hereto as **Exhibit A**.

20.     On June 3, 2020, and almost a month after the Petition Date, G4S sent a "contract termination notice" to Avianca (the "Termination Notice"), which (i) acknowledges the Debtors' chapter 11 filing, (ii) details certain outstanding prepetition amounts owed to G4S under the Facility Agreement, and (iii) purports to (x) terminate the Facility Agreement on 90-days' notice and (y) prior to such termination, suspend performance under the Facility Agreement, each on account of certain prepetition amounts outstanding. Importantly, the Termination Notice provides that services would not, in fact, be suspended if Avianca promptly satisfied a portion of G4S's alleged prepetition claim. A true and correct certified English translation of the Termination Notice is attached hereto as **Exhibit B**.

21.     Six days after delivery of the Termination Notice, and following numerous good faith attempts by counsel and certain Avianca employees to resolve the dispute, Avianca delivered a second letter (the "Second Notice"), dated as of June 9, 2020. The Second Letter reiterates the automatic stay's broad protections and explicitly notifies G4S of the need for its services in connection with Avianca's immediate resumption of operations in Ecuador. A true and correct copy of the Second Notice is attached hereto as **Exhibit C**.

22.     In spite of the First Notice and Second Notice, and with explicit knowledge of entry of the Automatic Stay Order, G4S continued to withhold performance under the Facility

Agreement. As such, and in light of the then-imminent resumption of their Ecuadorian operations, the Debtors were compelled to secure an alternative services provider.

23.    On or about June 29, 2020 the Debtors were notified of G4S's demand for a mediation hearing before the Center of Arbitration and Mediation of the Chamber of Commerce of Quito concerning its alleged prepetition claim.

24.    On July 2 and 8, 2020, the Center of Arbitration and Mediation of the Chamber of Commerce of Quito conducted the requested mediation hearing in two separate sessions. At the hearing, G4S threatened to formally commence litigation in Ecuador against the Debtors. In connection with such litigation, G4S announced its intent to seek attachment of the Debtors' bank accounts in Ecuador.

## COUNT ONE
### (Willful Violation of Section 362(a) of the Bankruptcy Code)

25.    The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

26.    Section 362(a) of the Bankruptcy Code provides that "a petition filed under section 301, 302, or 303 of this title…operates as a stay, applicable to all entities, of:

> (1) the commencement or continuation…of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;…(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;…(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. 362(a).

27.    All funds and contract rights owned or held by the Debtors constitute property of their estates pursuant to section 541 of the Bankruptcy Code.

28.     G4S was delivered the First Notice, the Second Notice and the Automatic Stay Order.

29.     Sections 362 and 365 of the Bankruptcy Code, and the Automatic Stay Order, are each clear and unambiguous.

30.     G4S is, and at all relevant times has been, aware of the existence of the automatic stay.

31.     G4S is, and at all relevant times has been, aware of the Debtors' efforts to resume operations in Ecuador.

32.     G4S's delivery of certain oral and written communications threatening to suspend performance under the Facility Agreement if the Debtors do not satisfy the prepetition claims allegedly owing to G4S constitutes a willful and deliberate violation of section 362(a) of the Bankruptcy Code.

33.     G4S's intentional failure to perform under the Facility Agreement constitutes a willful and deliberate violation of sections 362(a) and 365 of the Bankruptcy Code.

34.     G4S's delivery of the Termination Notice constitutes a willful and deliberate violation of sections 362(a) and 365 of the Bankruptcy Code.

35.     G4S's formal demand for a mediation hearing in Ecuador constitutes a willful and deliberate violation of section 362(a) of the Bankruptcy Code.

36.     G4S's issuance of an express threat to institute litigation against the Debtors constitutes a willful and deliberate violation of section 362(a) of the Bankruptcy Code.

37.     G4S's issuance of an express threat to attach certain bank accounts belonging to the Debtors constitutes a willful and deliberate violation of section 362(a) of the Bankruptcy Code.

38.     G4S has acted with specific and general intent to violate sections 362 and 365 of the Bankruptcy Code.

39.     The Debtors have suffered irreparable harm in being deprived of G4S's essential services during their attempt to resume operations in Ecuador.

40.     The Debtors have suffered irreparable harm in devoting significant resources to defending their estates against G4S's ongoing collection attempts.

41.     The Debtors are at risk of suffering additional immediate and irreparable harm resulting from G4S's intention to institute formal litigation and to attach or freeze the Debtors' bank accounts in Ecuador.

42.     G4S's violation of the automatic stay is clear and unambiguous.

43.     In light of the imminent nature of G4S's threats and the unknowable outcome of any ensuing litigation, monetary damages are presently insufficient to compensate the Debtors for their ongoing injuries.

44.     G4S should be temporarily and permanently enjoined from commencing or continuing any judicial, administrative or other action or proceeding against the Debtors related to its alleged prepetition claim.

45.     G4S should be temporarily and permanently enjoined from commencing or continuing any act to recover or collect on its alleged prepetition claim.

46.     G4S should be temporarily and permanently enjoined from commencing or continuing any act to seize, control or otherwise possess property of the Debtors' estate.

47.     The Debtors are entitled to injunctive relief pursuant to Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 65.

48.     The Debtors are entitled to recover from G4S actual damages, including costs and attorneys' fees, as well as punitive damages.

## COUNT TWO
### (Declaration that G4S Violated the Automatic Stay)

49.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

50.     An actual controversy has arisen and now exists between G4S and the Debtors as to whether G4S has violated the automatic stay. *See* 28 U.S.C. § 2201.

51.     As more specifically set forth *supra*, Count 1, G4S has violated the automatic stay contained in section 362 of the Bankruptcy Code.

52.     Accordingly, the Debtors respectfully submit that entry of a declaratory judgment finding that G4S violated the automatic stay is just and proper.

## COUNT THREE
### (Declaration that G4S Willfully Violated the Automatic Stay)

53.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

54.     An actual controversy has arisen and now exists between G4S and the Debtors as to whether G4S has willfully violated the automatic stay. *See* 28 U.S.C. § 2201.

55.     As more specifically set forth *supra*, Count 1, G4S has willfully violated the automatic stay contained in section 362 of the Bankruptcy Code.

56.     Accordingly, the Debtors respectfully submit that entry of a declaratory judgment finding that G4S willfully violated the automatic stay is just and proper.

## **RELIEF REQUESTED**

**WHEREFORE** the Debtors respectfully request that the Court enter a judgment: (i) declaring, pursuant to sections 362(a) and 365 of the Bankruptcy Code, that G4S has violated or willfully violated the automatic stay; (ii) enjoining G4S from commencing or continuing, wherever located, any (x) judicial, administrative or other action or proceeding against the Debtors related to its alleged prepetition claims; (y) act to recover or collect on its alleged prepetition claims; and (z) act to seize, control or otherwise possess property of the Debtors' estates; (iii) awarding the Debtors actual and punitive damages, including attorneys' fees and costs incurred in connection with G4S's violation of sections 362(a) and 365 of the Bankruptcy Code, and (iv) granting such other relief as this Court deems just and proper.

Dated: July 14, 2020

**MILBANK LLP**

*/s/ Alan Stone*
Dennis F. Dunne
Evan R. Fleck
Alan Stone
55 Hudson Yards
New York, NY 10001-2163
Telephone:  (212) 530-5000
Facsimile:   (212) 530-5219

-and-

Gregory A. Bray
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile:  (213) 629-5063

*Counsel for Debtors and
Debtors-In-Possession*

**Exhibit A**

**First Notice**

# Milbank

**ALAN STONE**

*Partner*

55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5285
astone@milbank.com  |  milbank.com

May 18, 2020

**VIA EMAIL**

Esteban Ortiz
Administrative Coordinator
G4S FACILITY MANAGEMENT CIA. LTDA.
Esteban.ortiz@ec.g4s.com

Andres Ochoa
andres.ochoa@ec.g4s.com

Re:     Agreement for Providing Facility Management Services in Ecuador No. 193. In re
        Avianca Holdings S.A., *et al.*, Case No. 20-11133 (Bankr. S.D.N.Y.)

We are in receipt of your email dated May 12, 2020 regarding the suspension of services under the Agreement for Providing Facility Management Services in Ecuador No. 193.

Please be advised that we are counsel to Avianca Holdings S.A. and certain of its affiliates set forth on **Exhibit A** hereto (collectively, the "Debtors"). On May 10, 2020, the Debtors commenced chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Chapter 11 Cases are being jointly administered for procedural purposes only under Case No. 20-11133. All further pleadings and other papers shall be filed in, and all further docket entries shall be made in, Case No. 20-11133.

Upon the filing of a chapter 11 case, a self-effectuating stay and injunction (the "Automatic Stay") immediately comes into effect, which prohibits and invalidates a wide range of activity related to the Debtors. On May 11, 2020, out of an abundance of caution, the Debtors sought, and the Bankruptcy Court entered, an Order reiterating the protections of the Automatic

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Stay and approving a form of notice (the "Notice") related thereto. The Notice is attached to this letter as **Exhibit B**.

        In accordance with the Automatic Stay, and otherwise pursuant to sections 362 and 365 of the Bankruptcy Code, all persons are enjoined from terminating or modifying any contract with the Debtors, notwithstanding any provision or applicable law that permits such contract to be terminated based upon the insolvency or financial condition of the Debtors.  Moreover, in accordance with the Supreme Court of the United States' decision in *N.L.R.B. v. Bildisco & Bildisco*, and its progeny, each contract counterparty is precluded from enforcing the terms of such contract against the Debtors unless and until it has been formally assumed. The effect of these authorities is such that all parties must continue to perform and comply with contractual obligations owed to the Debtors throughout the pendency of these Chapter 11 Cases unless instructed otherwise.

        The Automatic Stay also prohibits, among other things, (i) commencing or continuing certain litigation or other judicial or administrative proceedings against a Debtor, (ii) creating or enforcing a lien against the Debtors' property, (iii) any attempt to take possession of or exercise control over any of the Debtors' assets or property, of any nature whatsoever, located anywhere in the world, and (iv) any other action to enforce or collect pre-bankruptcy claims against the Debtors.  The Automatic Stay is extremely broad in scope, applies to almost any type of formal or informal action taken against any Debtor or its property, and stays all such activity throughout the world.

        As further detailed in the Notice, any violation of section 362 or 365 of the Bankruptcy Code is punishable as contempt of court and the Debtors hereby reserve their rights to exercise all rights and remedies in connection therewith.  Please govern yourself accordingly.

        Please contact me if you have any questions.

        Sincerely,

        _/s/ Alan Stone_____
        Alan Stone

Encl.

## Exhibit A

1. Aero Transporte de Carga Unión, S.A. de C.V.
2. Aeroinversiones de Honduras, S.A.
3. Aerovías del Continente Americano S.A. Avianca
4. Airlease Holdings One Ltd.
5. America Central (Canada) Corp.
6. America Central Corp.
7. AV International Holdco S.A.
8. AV International Holdings S.A.
9. AV International Investments S.A.
10. AV International Ventures S.A.
11. AV Investments One Colombia S.A.S.
12. AV Investments Two Colombia S.A.S.
13. AV Taca International Holdco S.A.
14. Avianca Costa Rica S.A.
15. Avianca Holdings S.A.
16. Avianca Leasing, LLC
17. Avianca, Inc.
18. Avianca-Ecuador S.A.
19. Aviaservicios, S.A.
20. Aviateca, S.A.
21. Avifreight Holding Mexico, S.A.P.I. de C.V.
22. C.R. Int'l Enterprises, Inc.
23. Grupo Taca Holdings Limited
24. International Trade Marks Agency Inc.
25. Inversiones del Caribe, S.A.
26. Isleña de Inversiones, S.A. de C.V.
27. Latin Airways Corp.
28. Latin Logistics, LLC
29. Nicaraguense de Aviación, Sociedad Anónima (Nica, S.A.)
30. Regional Express Américas S.A.S.
31. Ronair N.V.
32. Servicio Terrestre, Aereo y Rampa S.A.
33. Servicios Aeroportuarios Integrados SAI S.A.S.
34. Taca de Honduras, S.A. de C.V.
35. Taca de México, S.A.
36. Taca International Airlines S.A.
37. Taca S.A.
38. Tampa Cargo S.A.S.
39. Technical and Training Services, S.A. de C.V.

## **Exhibit B**

*[Omitted]*

**Exhibit B**

**Termination Notice**



Quito-Ecuador
General Roca N33-92 & Bosmediano,
Tel: 2260016 / 6020433 / 6000175
www.g4s.ec

On the basis of the principles of the Electronic Commerce Act, this official notification is likewise sent to the email addresses:
patricia.chiriboga@avianca.com and diego.uquillas@avianca.com

Quito D.M., 03 June 2020
Document No. 027-legalg4s-2020

Dr
Patricia Chiriboga
**General Manager**
**AVIANCA ECUADOR S.A.**
Quito.

Mr
Diego Uquillas
**Maintenance Inspector**
**AVIANCA ECUADOR S.A.**
Quito.

Re: Contract Termination Notification

Dear Patricia,

On May 18, 2020, I received from the Strategic Supply Manager Mr Juan Guillermo Alzate, an email stating that Avianca has voluntarily filed for Chapter 11 under the United States Bankruptcy Code. The aforementioned document confirms various aspects for information purposes, although no indication is given with regard to the payments pending for our services as detailed below:

| AVIANCA ECUADOR S.A. | | |
|---|---|---|
| **Billing Month** | **Value** | **Due at 90 days** |
| January/2020 | $28,519.56 | April 14 |
| February/2020 | $36,596.77 | May 14 |
| March/2020 | $29,892.28 | June 6 |
| April/2020 | $26,970.30 | July 15 |
| **TOTAL** | **$121,978.91** | |

Although we regret and are sympathetic towards the situation being experienced by such a prominent airline as Avianca, we must also look after the interests of G4S

Facility Management Compañía Limitada, since as may be seen, we have unpaid services dating back to January 2020.

We respect the American processes and laws with regard to Chapter 11, but as agreed in the FACILITY MANAGEMENT SERVICES CONTRACT that we signed jointly on November 19, 2018, and which, by the way, constitutes the "Law for the Parties", we freely and voluntarily agreed as to the parameters governing this provision, and even the applicable jurisdiction. Therefore, on the basis of Clause 15(b), we hereby formally serve 90 days' notice of termination of the contract.

With regard to the services we have been providing, and given the payment default which has occurred, we avail ourselves of paragraph five of Clause Five, which provides and entitles us to suspend these services, notwithstanding the late-payment interest surcharge. This suspension of services will take effect on June 15, 2020, unless prior to the stated date the overdue payments corresponding to the invoices issued in January and February 2020 are settled, amounting to **USD 65,116.33**, in which case we would continue to provide our services until the date of termination of the contract, subject to further suspensions in the event of non-fulfillment of payments as they fall due.

We confirm our willingness to provide the services enabling you to continue your operations, but this is unsustainable without the basic cash flow required to cover the costs of the Project. It should also be borne in mind that under local legislation, our services are governed under the principles of Constitutional Mandate No. 8, establishing principles of co-responsibility even in the case of labor rights.

This notice of suspension of services and termination of the contract is served without prejudice - if necessary - to the commencement of other actions inherent in the recovery of the overdue payments, and other rights which we enjoy.

Yours sincerely,


Mr Andrés Ochoa C. (Lawyer)
**General Manager**
**G4S FACILITY MANAGEMENT COMPAÑÍA LIMITADA**



Ubiqus Reporting, Inc.
61 Broadway, Ste 1400
New York, NY 10006
Tel.: (212) 346.6666
Fax: (888) 412.3655

STATE OF NEW YORK      )
                       )         ss
COUNTY OF NEW YORK  )

## CERTIFICATE OF TRANSLATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and
accurate translation into English, completed on July 13, 2020 of "G4S Termination Notice"
originally written in Spanish.

*Patrick Volpe*
Patrick Volpe
Director of Production
Ubiqus Reporting, Inc.

Sworn to and subscribed before me,
This July 13, 2020.

*Steven J. Albert*
Notary Public

```
STEVEN J. ALBERT
Notary Public
New York County
State of New York
Commission Expires 1/31/2023
```

**Exhibit C**

**Second Notice**



**ALAN STONE**

*Partner*

55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5285
astone@milbank.com | milbank.com

June 9, 2020

**VIA EMAIL**

Esteban Ortiz
Coordinador Administrativo
G4S FACILITY MANAGEMENT CIA. LTDA.
Esteban.ortiz@ec.g4s.com

Andrés Ochoa
andres.ochoa@ec.g4s.com

Re:    Contrato de Prestación de Servicios de Facility Management (the "Services
Agreement")- In re Avianca Holdings S.A., *et al.*, Case No. 20-11133 (Bankr.
S.D.N.Y.)

Dear Sirs,

We are in receipt on your letter dated May 12, 2020 and have responded by
formally advising you of the breadth and effect of the Automatic Stay, which prohibits, among
other things, the termination of a contractual relationship with any debtor entity or the
modification of the contractual terms in force. Nonetheless, we received your letter dated June 3,
2020, where G4S insists on (i) unilaterally terminating the Services Agreement, and (ii)
suspending the services effective June 15, 2020.

As a response, we had a conversation on June 3, 2020 with your Regional General
Counsel, where we insisted on the applicability of the Automatic Stay and urged G4S to honor
the terms of the Services Agreement. We also noted that even if the Services Agreement is
governed by the laws of Ecuador, G4S is a multinational company with presence in the US that
is subject to  the Automatic Stay.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

However, G4S has failed to formally respond and has also continued to fail to abide by the contractual terms of the Services Agreement currently in place. As you are aware, Avianca will restart operations in Ecuador on June 15, 2020, for which the contractual services of G4S are necessary from June 8, 2020 at the latest.

In light of the urgency of this matter and your failure to comply with applicable U.S. law, we are writing to again reiterate our position that the Automatic Stay applies to G4S, and to express an intention to pursue a motion for civil contempt if G4S remains unwilling to promptly fulfill its contractual obligations. Please take notice that the reliability of restarting Avianca's operation in Ecuador may be substantially affected by your position.

Lastly, please note the Avianca values its relationship with G4S and intends to honor all monetary and non-monetary contractual obligations owed to G4S throughout these chapter 11 cases. Indeed, to the extent G4S holds up its end of the bargain and does not otherwise seek to improperly modify the terms of its agreement, the debtors are obligated to, in turn, comply with all of its own contractual obligations, including any and all payment obligations.

The debtors will continue to perform under their contracts with G4S, and strongly urge G4S to do the same.

I encourage you to have your lawyers contact me at the phone number provided herein to discuss an amicable resolution.

Sincerely,

 /s/ Alan Stone_____
Alan Stone